IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION


JOSEPH FERRIS                                                              PLAINTIFF


            v.                        CIVIL NO. 07-3030


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                    DEFENDANT


**<u>MEMORANDUM OPINION</u>**

Plaintiff James W. Ferris brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Commissioner of the Social Security Administration (Commissioner)

denying his claims for period of disability and disability insurance benefits (DIB) and supplemental

security income under the provisions of Title II of the Social Security Act (Act).

 **Procedural Background:**

Plaintiff filed his DIB and SSI applications on September 25, 2003, alleging an inability to

work since September 3, 2003, due to hearing loss.[1] (Tr. 54, 270). Plaintiff's application was denied

initially and on reconsideration. Pursuant to plaintiff's request, a hearing de novo before an

administrative law judge (ALJ) was held on March 16, 2006, at which plaintiff, represented by

counsel, plaintiff's wife and plaintiff's mother appeared and testified. (Tr. 283-318). Plaintiff also

alleged to having chest pain, heart problems and depression at the hearing before the ALJ.

By written decision dated January 22, 2007, the ALJ found that during the relevant time

period plaintiff had an impairment or combination of impairments that were severe. (Tr. 20).

---

[1]Plaintiff's onset date was amended to September 3, 2002, at the March 16, 2006, administrative hearing. (Tr. 303).

However, after reviewing all of the evidence presented, he determined that plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 20). The ALJ found plaintiff retained the residual functional capacity (RFC) to perform work that does not require excellent hearing. (Tr. 21). With regard to mental limitations, the ALJ found plaintiff could understand, remember and carry out simple instructions but would have difficulty with detailed instructions. The ALJ found plaintiff could perform work where interpersonal contact is only incidental to the work performed and complexity of tasks is learned and performed by rote with few variables with little judgment required. Supervision required would need to be simple, direct and concrete. (Tr. 21). With the help of a vocational expert, the ALJ determined plaintiff could perform other work as a hand packager, a small product assembler and a poultry eviscerator.(Tr. 144).

Plaintiff appealed the decision of the ALJ to the Appeals Council. When the Appeals Council declined review on May 10, 2007, the ALJ's decision became the final action of the Commissioner. (Tr. 3-5). Plaintiff now seeks judicial review of that decision. (Doc. #1). Both parties submitted appeal briefs. (Doc. # 7,8). This case is before the undersigned pursuant to the consent of the parties.

**Evidence Presented:**

At the administrative hearing before the ALJ on March 16, 2006, plaintiff was forty-eight years of age. (Tr. 289). Plaintiff reported he dropped out of school after the seventh grade but reported he was passed along in school to keep him with children his age even if he did not meet the academic requirements to move up a grade. (Tr. 290). The record reflects plaintiff's past relevant work consists of work as a construction worker, a flagger and a tire repairer. (Tr. 143, 290-295).

The pertinent medical evidence in this case reflects the following. On October 30, 2003, plaintiff underwent a psychological screening evaluation performed by Dr. Letitia C. Hitz. (Tr. 148-151, 201-204). Plaintiff reported he received special services while in school and that he was passed despite not having acquired academic skills. Plaintiff reported he taught himself to read the newspaper. He reported he was hard of hearing and that he was forced to learn to read lips because hearing aids did not work. Plaintiff reported losing jobs because of his hearing loss. He reported he was willing to do "any job." Dr. Hitz noted that when plaintiff was able to look directly at a person, plaintiff's responses indicated plaintiff understood questions and instructions. The following tests were administered: test of nonverbal intelligence, third edition; wide range achievement test -3; shipley institute of living scale; wonderlic personnel test; Ohio literacy test; written language assessment; and clinical interview. Dr. Hitz opined plaintiff's intellectual functioning fell within the borderline range. Dr. Hitz noted plaintiff's mild deficits of academic skills were consistent with his intellectual functioning and the history of limited educational opportunities rather than a learning disorder. Dr. Hitz opined plaintiff's score suggested plaintiff would not benefit from formalized classroom training and that plaintiff would need explicit instruction. Dr. Hitz opined plaintiff should be able to learn to use simple equipment and perform routine jobs. Dr. Hitz also opined extensive vocational and personal guidance and assistance would be required. Dr. Hitz opined if plaintiff was provided supportive counseling and rehabilitative services plaintiff may reasonably be expected to function by means of low-demand employment.

On December 3, 2003, plaintiff presented to Dr. Stephen Cashman's office with complaints of bilateral hearing loss that had been present for most of his life. (Tr. 152-154). Plaintiff also reported occasional tinnitus in his left ear. Plaintiff denied otalgia, vertigo and drainage from his ear.

3

Upon examination, Dr. Cashman noted plaintiff exhibited significant difficulty understanding speech at normal conversational levels. Dr. Cashman diagnosed plaintiff with moderate to profound bilateral sensorineural hearing loss. Dr. Cashman strongly recommended a hearing aid evaluation.

In a letter dated December 17, 2003, Mr. Monte Hardin, M.A., an audiologist, reported he evaluated plaintiff's hearing. (Tr. 155-156, 205-206). Mr. Hardin noted plaintiff tried to attribute his hearing loss to a childhood injury. Mr. Hardin noted there was no documented report of a skull an/or temporal bone fracture. Plaintiff also reported he had not been able to hold a job due to safety concerns. Mr. Hardin noted both plaintiff's mother and brothers had hearing loss and he believed plaintiff's hearing loss was most likely a genetic impairment. Mr. Hardin noted the audiogram revealed no usable hearing in plaintiff's left ear but good residual hearing in plaintiff's right ear. Mr. Hardin opined plaintiff's hearing problem was primarily sensorineural. Mr. Hardin recommended a hearing aid for plaintiff's right ear for social purposes. With regard to working, Mr. Hardin opined plaintiff had a justifiable case for disability.

On June 13, 2005, plaintiff entered the Baxter Regional Medical Center (Baxter) emergency room complaining of chest pain. (Tr. 207-226, 235-251). Plaintiff reported his chest pain started earlier in the day while he was working on some heavy equipment. Plaintiff reported his boss recommended he be evaluated. Plaintiff reported feeling better soon after and had not experienced anymore pain but his mother made him come in for an evaluation. Plaintiff denied diaphoresis, nausea, vomiting or shortness of breath. Plaintiff reported he had experienced a couple of similar episodes that did not last as long in the past. Plaintiff reported he was generally healthy. Plaintiff reported a history of migraine headaches. Dr. Melissa N. Quevillon noted plaintiff's EKG was normal and cardiac markers were negative. Plaintiff was admitted for observation.

Plaintiff underwent a stress cardiolite study which revealed no present ischemia. (Tr. 209). Left ventricular enlargement of a very mild amount was identified with mild decreased LV function and ejection fraction of 48%. Dr. Michael Camp indicated a clinical correlation was required. Plaintiff was discharged on June 14, 2005, with the following diagnoses: probable noncardiac chest discomfort, borderline hypertension, mildly depressed ejection fraction by nuclear scan gating, hypercholesterolemia and smoking cessation counseling. Dr. Lincoln Godfrey prescribed Lipitor. Dr. Godfrey also elected plaintiff to undergo a cardiac consultation.  Dr. Godfrey told plaintiff he would need to have LFTs in one month and again counseled plaintiff on smoking cessation. (Tr. 213).

Progress notes dated June 22, 2005, from the Mountain Home Christian Clinic, indicate plaintiff had a past history of a heart attack and blood clots. (Tr. 198). Plaintiff reported that he did not hear well due to an accident when he was young and that he read lips. Plaintiff also reported he had poor eyesight. Plaintiff's medication consisted of Lipitor. Plaintiff reported he smoked one package of cigarettes a day.

In progress notes dated July 7, 2005, plaintiff reported he had a heart attack on June 13, 2005. (Tr. 199, 232-233).  Plaintiff denied chest pain or shortness of breath. Plaintiff reported he wanted to stop smoking.  Plaintiff was diagnosed with hypertension and tobacco addiction. Plaintiff was prescribed Toprol and  Lipitor and a Nicoderm patch.

On August 11, 2005, plaintiff underwent a neuropsychological evaluation performed by Dr. Vann Arthur Smith. (Tr. 187-191). Dr. Smith noted the clinical history given by plaintiff and his spouse seemed reliable and that he had requested plaintiff's medical records for review. Plaintiff reported having significant bilateral hearing impairment, hypercholesterolemia, hypertension,

5

chronic airway disease, cardiac disease and a closed head injury. Plaintiff reported using one-half package of cigarettes per day and consuming about thirty cups of coffee a day.

Upon examination, Dr. Smith noted plaintiff was oriented to gross time, generalized place and person. Plaintiff's affect was muted and shallow and his mood was mildly anxious and dysthymic. Dr. Smith noted plaintiff's native intelligence was estimated to lie within the normal range. Plaintiff's thought processes were noted to be functional to abstract in quality. Plaintiff's gait was slow and hesitant and his posture was guarded. Plaintiff underwent a battery of tests including the Wechsler Adult Intelligence Scale-Revised that indicated a Full Scale IQ of 89. After reviewing plaintiff's test scores, Dr. Smith stated:

> The patient's clinical history, mental status examination and neuropsychodiagnostic screening test profile data reflect a pattern of abnormal findings consistent with the presence of bilateral, diffuse organic brain dysfunction of moderate severity, longstanding and slowly progressive velocity. The pattern of abnormal responses noted across the patient's neuropsychodiagnostic screening test profile is similar to that associated commonly with 1) chronic cardiovascular disease, 2) cerebrovascular, hypoxic, toxic or metabolic encephalopathy, 3) the residua[l] of traumatic brain insult and 4) chronic pain syndromes of various etiologies. These findings are, to a significant degree of scientific certainty, consistent with the patient's reported clinical history of CAD, Hypercholesterolemia, HTN and Cardiac Disease (MI). Resultant neurocognitive symptoms interfere significantly with his ability to carry out routine activities of daily living in a consistent manner, rendeting (sic) him, in my clinical opinion, disabled at this time.

(Tr. 191).

Dr. Smith also completed a mental RFC questionnaire opining plaintiff had mild to serious limitations in many areas of functioning. (Tr. 192-196).

In progress notes dated January 5, 2006, plaintiff reported he had a heart attack in July and was treated at Baxter and placed on specific medications. (Tr. 200, 230-231). Dr. Paul Wilbur noted plaintiff complained of shortness of breath and chest pain. Plaintiff reported he experienced chest

6

pain upon exertion and that the pain resolved with rest. Plaintiff reported he could walk without difficulty but was unable to chop firewood, sling a sledgehammer or walk up a tall hill due to chest pain. Plaintiff reported he was being sued by Baxter because he could not pay his bill and that he did not wish to go back to Baxter. Dr. Wilbur believed plaintiff had stable angina and added hydrochlorothiazide to his daily regimen. Plaintiff was also placed on Nitro caps three times a day and was given nitroglycerin to carry with him. Plaintiff was to continue with Toprol XL.

Progress notes dated February 16, 2006, report plaintiff came in for a medication refill. (Tr. 228). Plaintiff also complained of headaches, inappropriate behavior, anger, and that he was being difficult to deal with at home. Dr. Wilbur opined plaintiff probably had coronary artery disease. Dr. Wilbur noted plaintiff was on nitroglycerin and that plaintiff used subliminal nitroglycerin which seemed to relieve pain. Dr. Wilbur noted plaintiff was stable with his present course and did not see much benefit in a more aggressive evaluation. Dr. Wilbur indicated he would give plaintiff some Maxalt to use for his severe headaches.

**<u>Applicable Law:</u>**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided

the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920.

8

**Discussion:**

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

The record establishes plaintiff has a severe hearing impairment. On December 3, 2003, Dr. Cashman reported plaintiff exhibited significant difficulty understanding speech at normal conversational levels. Dr. Cashman diagnosed plaintiff with moderate to profound bilateral sensorineural hearing loss and strongly recommended a hearing aid evaluation. Plaintiff was seen by Mr. Hardin, an audiologist, on December 17, 2003. Mr. Hardin reported an audiogram revealed no usable hearing in plaintiff's left ear but good residual hearing in plaintiff's right ear. Mr. Hardin opined plaintiff's hearing problem was primarily sensorineural. Mr. Hardin recommended a hearing

aid for plaintiff's right ear for social purposes. While plaintiff reported hearing aids did not work for him there is no indication in the record showing plaintiff tried to use hearing aids and that the hearing aids failed. The record does show plaintiff now has a CapTel phone so that plaintiff could receive captioned messages for incoming calls. (Tr. 268-269). This phone does not discount the fact that it was recommended plaintiff obtain a hearing aid for his right ear and that plaintiff has not attempted to acquire or use a hearing aid. *Brown v. Barnhart*, 390 F.3d 535, 540-541 (8th Cir. 2004)(citations omitted)("Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits."), 20 C.F.R. § 416.930(b).

With regard to plaintiff's alleged chest pain and cardiac impairment, the record fails to establish plaintiff was ever diagnosed with cardiac chest pain. Plaintiff was diagnosed with hypertension which has been effectively stabilized with medication. *Brown v. Barnhart*, 390 F.3d 535 at 540; *Hausmann v. Astrue*, 2008 WL 783277, 15 (E.D.Mo. 2008). Plaintiff alleges he suffered a heart attack in June of 2005; however, the medical records indicate plaintiff was admitted into Baxter after experiencing chest pain earlier in the day. The records indicate plaintiff underwent a stress cardiolite study that revealed no ischemia present although there was mild left ventricular enlargement and a decreased ejection fraction of 48%. Laboratory test results revealed three sets of negative cardiac markers. Upon discharge, plaintiff was instructed to follow up for more testing but the record fails to show he sought treatment from the cardiologist. *Brown v. Barnhart*, 390 F.3d 535 at 540-541. Plaintiff has sought treatment at a clinic for chest pain and reported to the examiners that he suffered a heart attack. The examiner noted plaintiff did not want to return to Baxter because plaintiff owed the hospital money and that he felt plaintiff had stable angina. The ALJ noted the medical record fails to establish plaintiff suffered from a heart attack or that plaintiff has a cardiac

10

disorder. Dr. Wilbur indicates he is treating plaintiff for coronary artery disease, but he did not provide any objective tests to support his diagnosis. After thoroughly reviewing the record, we find substantial evidence to support the ALJ's determination that plaintiff does not have a severe cardiac impairment.

With regard to plaintiff's alleged depression, the record indicates plaintiff did not allege a disabling mental impairment when he applied for benefits. *See Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir. 1993) (substantial evidence supported ALJ's discounting of psychiatrist's opinion that claimant suffered from disabling mental impairment where, inter alia, claimant did not allege mental impairment in disability application); *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (failure to allege disabling mental impairment in application is significant, even if evidence of depression is later developed). Further, the record fails to demonstrate plaintiff sought on-going and consistent treatment for a mental impairment. *See Jones v. Callahan*, 122 F.3d 1148, 1153 (8th Cir. 1997) (ALJ properly concluded claimant did not have a severe mental impairment, where claimant was not undergoing regular mental-health treatment or regularly taking psychiatric medications, and where his daily activities were not restricted from emotional causes).

Plaintiff's reports concerning his daily activities are also inconsistent with his claim of disability. In October of 2003, plaintiff reported he was able to take care of his personal needs; to take care of household chores including taking out the trash, doing home repairs, repairing cars, washing cars, mowing the lawn, raking leaves and gardening; to prepare some meals, drive and walk for errands and exercise; to hunt during deer season; and to cut wood for two homes. (Tr. 81-82). Medical records indicate plaintiff reported he was working on heavy equipment on June 13, 2005, when he experienced an episode of chest pain and was admitted for observation. (Tr. 211). We

would point out that plaintiff was discharged from the hospital on June 14, 2005, with instructions to resume normal activities. (Tr. 223). Plaintiff testified that he was more limited with activities following his heart attack; however, as discussed above plaintiff did not experience a heart attack and plaintiff was instructed to resume normal activities. These activities as discussed above clearly show plaintiff is capable of performing activities of daily living.

With regard to the testimony of plaintiff's wife and mother, the ALJ properly considered their testimony but found it unpersuasive. This determination was within the ALJ's province. *See Siemers v. Shalala*, 47 F.3d 299, 302 (8th Cir. 1995); *Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir. 1993).

Based on the above discussion, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

We will next discuss the ALJ's RFC determination. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 416.945(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliam v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a

claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In finding plaintiff able to perform the RFC discussed above, the ALJ considered plaintiff's subjective complaints, the medical records of his treating physicians, and the evaluations of non-examining medical examiners. With regard to plaintiff's intellectual functioning, the ALJ discussed his reasoning for accepting Dr. Smith's opinion plaintiff was of low average intellectual functioning based on plaintiff's Wechsler Adult Intelligence Scale-Revised test results that indicated a Full Scale IQ of 89. The ALJ noted Dr. Hitz's finding plaintiff's intellectual functioning fell with in the borderline range but found the test used by Dr. Smith was the agency's recognized standard test for testing intellectual functioning. We would point out it is the ALJ's function to resolve conflicts among the various treating and examining physicians and we find the record contains substantial evidence to support the ALJ's determination. *Estes v. Barnhart,* 275 F.3d 722, 725 (8th Cir.2002) (internal quotation marks omitted).

Plaintiff alleges the ALJ exhibited bias towards Dr. Smith's assessment due to problems the ALJ had with Dr. Smith. We have reviewed the ALJ's opinion thoroughly as well as the record and do not see bias. A review of Dr. Smith's assessment and findings indicates Dr. Smith based a large part of his analysis on plaintiff's report of his medical history including that of a heart attack and heart related impairments and a head injury. As discussed above, the medical record does not establish plaintiff had a heart attack or that plaintiff has a cardiac disorder or that plaintiff sustained a head injury. Since Dr. Smith clearly indicates plaintiff's cardiac disorder was part of the basis for his findings and assessment it was only proper for the ALJ not to give full weight to all of Dr. Smith's opinion. The ALJ accepted the portions of Dr. Smith assessment, namely plaintiff's level

of intellectual functioning based on standardized objective testing, that he found to be supported by the record as a whole.

Based on our above discussion of the medical evidence and plaintiff's daily activities, we believe substantial evidence supports the ALJ's RFC assessment.

We also find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. (Tr. 92-94). *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that plaintiff's impairments do not preclude him from performing other work. *See Pickney*, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 29th day of May 2008.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

14